JAMES P. KEMP, ESQ.
Nevada Bar No.: 6375
KEMP & KEMP
7435 W. Azure Drive, Ste 110
Las Vegas, NV  89130
702-258-1183 ph./702-258-6983 fax
jp@kemp-attorneys.com
*Attorneys for Plaintiff Alice Wieland*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| ALICE WIELAND,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION, a political subdivision of the State of Nevada;<br><br>　　　　　Defendant. | Case No.: 3:19-cv-724<br><br>**COMPLAINT FOR DECLARATORY AND MONETARY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

**COMES NOW** Plaintiff, ALICE WIELAND, by and through Counsel of Record, JAMES P. KEMP, ESQ., of the law firm of KEMP & KEMP, ATTORNEYS AT LAW, and for a cause of action does hereby state and allege as follows:

Plaintiff Alice Wieland (hereinafter Professor Wieland) by and through her undersigned attorneys, files this Complaint for declaratory, injunctive, and monetary relief against the Defendants (herein referred to as the University of Nevada, Reno or "UNR") to seek redress for violations of the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §621 et seq., Title VII of the Civil Rights Act, 42 U.S.C. §§2000e, et seq. ("Title VII"),  Nev. Rev. Stat. Ann. § 613.310  et seq. ("NRS"), and Nevada common law when she was denied tenure.

1

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to pursuant to 42 U.S.C. §1981(a), 28 U.S.C. § 1343(a), and 28 U.S.C. § 1331 because the acts and omission raised herein raise a federal question.

2. Venue is proper in the United States Court for the District of Nevada, and in the unofficial Northern Division of the court, pursuant to 28 U.S.C. § 1391(b)(1) because all events or omissions giving rise to Plaintiff's claims occurred in the District of Nevada, Washoe County.

## PARTIES

3. Plaintiff Alice Wieland was an Assistant Professor of Management Sciences at UNR from July 2012 until July 2019.

4. At all times relevant to this Complaint, Professor Wieland was an employee within the meaning of the ADEA, 29 U.S.C. § 630(f), Title VII, 42 U.S.C. § 2000e(f); and is a person protected by Nev. Rev. Stat. Ann. § 613.330(1)(a) .

5. Defendant is and was at all times relevant to this Complaint an employer within the meaning of ADEA, 29 U.S.C. § 630(f), Title VII, 42 U.S.C. § 2000e(f), Nev. Rev. Stat. Ann. § 613.310 (2) and (5).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Professor Wieland exhausted all administrative remedies as required before filing this action.

7. All conditions precedent to the filing of this lawsuit have been performed or have occurred as required by Title VII, 42 U.S.C. §2000e-5.13.

8. All conditions precedent to the filing of this lawsuit have been performed or have occurred as required by the ADEA, 29 U.S.C. §§626(d)and (e).

9. All conditions precedent to the filing of this lawsuit have been performed or have occurred as required by Nevada Revised Statutes; and this action is being filed within 90 days of receipt of the notice provided by the Nevada Equal Rights Commission (hereafter NERC) and/or the EEOC.

**FACTS**

10. Professor Wieland was employed as an Assistant Professor in the University of Nevada, Reno's Managerial Sciences ("MGRS") Department in the College of Business from July 2012 until June 30, 2019.

11. Professor Wieland first applied for tenure August 2017.

12. There are four sets of rules that govern tenure decisions: (a) Nevada System of Higher Education (NSHE) Code, (b) University of Nevada Reno (UNR) bylaws; (c) University of Nevada Reno College of Business ("COB") bylaws; and (d) University of Nevada Reno Department of Managerial Sciences ("MGRS") Bylaws. They are hereafter collectively referred to as "Rules". The Rules are incorporated into and a part of Professor Wieland's contract(s) with UNR.

13. The decision to grant or deny Professor Wieland tenure was ultimately made by the University President after receiving recommendations from (1) a subcommittee of the Department of Managerial Sciences (MGRS), composed of three professors of management (2) the full MGRS personnel committee (3) the MGRS chair; (4) the College of Business Personnel Committee; (5) the Dean of the College of Business; (6) the University Personnel Committee; and (7) the Provost.

14. The Rules (NSHE Code §3.4.2, UNR bylaw §3.4.5, COB bylaw §7.5.1, and MGRS bylaw §5) all state that tenure applicants shall be evaluated on their teaching performance, research contributions, and service.

15. In each of the above categories there are four possible ratings: excellent, commendable, satisfactory and unsatisfactory.

16. The Rules (NSHE Code 3.4.2, UNR Bylaw 3.4.5, COB Bylaw 7.5.1, and MGRS Bylaw 5.4) all state that an applicant for tenure is to be rated "excellent in either teaching or research" and no less than satisfactory in the other.

17. NSHE Code 3.4.2 and UNR Bylaw 3.4.5 states that any standards used to examine a candidate for tenure not in the university by-laws are inapplicable and void.

18. UNR Bylaw 3.3.2 states that all evaluations shall be made on the basis of equitable and uniform criteria.

19. NSHE Code 3.4.3, UNR Bylaw 3.4.5, and the UNR Promotion and Tenure Committee Rules and Procedures provide that a candidate's annual evaluations must be considered as part of his or her application for tenure. These provisions and requirements are incorporated into and part of Professor Wieland's contract(s) with UNR.

20. UNR Bylaw 3.4.4 requires that during his or her third-year review, a probationary employee is to be informed of their progress towards tenure "including the program of improvement that must be undertaken to be considered for tenure at a later date." COB Bylaw 7.4 states that "[d]epartment chairs must forward the results of this third-year review to the Dean and the College Academic Personnel Committee, who shall advise the Dean. The Dean will inform the faculty member and department chair, in writing of the results and recommendations of the

4

review." These provisions and requirements are incorporated into and part of Professor Wieland's contract(s) with UNR.

21. On April 2, 2015, the MGRS Department Personnel Committee made up of Professors Frances McKee-Ryan, Igor Makienko, and Arun Upadhyay informed Professor Sherri Faircloth, the Chair of the MGRS department, that Professor Wieland was making progress to become a tenured professor writing in the review of her third-year, "Wieland's teaching is improving and she has developed a good pipeline of research projects" and "[w]e note that Professor Wieland is an active participant in area, department, and college activities, and is a good colleague." On April 21, 2015, Professor Faircloth then informed the Dean of the College of Business Gregory Mosier of the MGRS Department's review.

22. On April 7, 2016, the MGRS Department Personnel Committee again made up of Professors McKee-Ryan, Makienko, and Upadhyay informed Department Chair Faircloth, that "there has been considerable progress toward research productivity" and "the committee notes that Professor Wieland has invested significant effort into improving her classroom performance". On April 13, 2016, Professor Faircloth informed Dean Mosier of the MGRS Department's review.

23. On April 13, 2017, the MGRS Department Personnel Committee once again made up of Professors McKee-Ryan, Makienko, and Upadhyay informed Department Chair Faircloth, , that Professor Wieland was on track to become a tenured professor writing, "The committee notes there has been considerable progress toward research productivity since the 4th year review." On April 30, 2017 Professor Faircloth informed Dean Mosier that "[t]he Department is optimistic based on Alice's research output to date. The Department notes significant success since the 4th year review and continues pipeline work.".

24. UNR Bylaw 3.3.3 states that annual evaluations "provide a primary source for decisions concerning tenure, promotion, and salary increases." These provisions and requirements are incorporated into and part of Professor Wieland's contract(s) with UNR.

25. Professor Wieland received commendable overall performance ratings in her first four years of employment. In her fifth year she received an excellent overall rating because the MGRS Department Personnel Committee rated her commendable in both teaching and service, and excellent in research.

26. In October 2017 three members of the department personnel subcommittee recommended tenure be denied. The personnel subcommittee was made up of Professors Rafik Beekun, Bret Simmons, and Yvonne Stedham.

27. The personnel subcommittee rated Professor Wieland unsatisfactory in teaching despite receiving a commendable rating in every annual evaluation and receiving the "Outstanding Faculty Award" in 2013.

28. The personnel subcommittee rated Professor Wieland commendable in research despite being rated excellent the five years prior and receiving the "Researcher of the Year" award in 2017.

29. UNR Bylaw 3.3.2 states "For tenure-track faculty members, external peer review shall be required for promotion or tenure." These provisions and requirements are incorporated into and part of Professor Wieland's contract(s) with UNR.

30. The personnel subcommittee characterized the outside reviewers' assessment of Professor Wieland's research as "mixed".

31. One reviewer wrote that the journals Professor Wieland is published in "such journals [that] only publish the very best among papers that undergo a highly competitive,

6

rigorous selection process" and "Professor Wieland's record of scholarly activities has successfully satisfied the applicable criteria… she demonstrates an accomplished research record. . . has generated national and international recognition that has served to enhance the reputation of her department, college, and university." Emphasis added.

32. Another reviewer wrote that "her work is increasingly recognized as high quality. . .the high number of citation on Professor Wieland's work in a short period of time . . . speak to the quality of her work, the field collective's recognition of the contribution this work makes to the field, and her status as a lead author." This reviewer also wrote that, "Compared to similar scholars at her career stage, Professor Wieland has relatively more published works where she is the first-author- or has equally-shared authorship" and "her 2017 ORM article is already shaping the conversation at the intersection of entrepreneurship and experimental methods." Emphasis added.

33. Still another reviewer wrote "Overall, Professor Wieland has been very productive, creating a record which is very impressive" and "the record shows that the candidate is very busy; the volume is great for someone who has been an Assistant Professor and is now looking forward to a promotion." Emphasis added.

34. Yet still another reviewer wrote "I am positively impressed with her productivity in the last 5 years and her focused research agenda; which is well-above the average of other junior faculty I have evaluated for promotion and tenure." Emphasis added.

35. There is no UNR bylaw about measuring a tenure candidate's teaching success against department or college means of student evaluations.

36. UNR Bylaw3.4.5(a)(1)(A) states that an applicant's reaching performance will be assessed using "demonstrated teaching competence and efficiency in the classroom . . . the

7

ability to communicate effectively with students and demonstrated skill in handling classroom and other duties related to teaching." MGRS Bylaw 5.2 states "the evaluation of teaching shall include but not be limited to: student evaluations, quality of course materials, and external teaching activities including, but not limited to, student advising, supervision of theses, supervision of independent studies, and coordination of student activities in professional organizations." These provisions and requirements are incorporated into and part of Professor Wieland's contract(s) with UNR.

37. The subcommittee claimed Professor Wieland "has consistently been substantially below the mean for the MGRS Department."

38. The subcommittee wrote, "concerning course content and format . . . her classes seem to be appropriately designed. The materials used and the course requirements seem appropriate." The subcommittee also wrote "Dr. Wieland supervised a total of five independent studies and one Honors Thesis. She served on two dissertation committees in Psychology and is serving on one in Social Psychology."

39. On October 13, 2017 the what was supposed to be the full seven-member Managerial Sciences Department Personnel Committee met. In fact, only four members were present.

40. Two faculty members who were not on the subcommittee "raised some issues about potential inconsistencies. They pointed out that the letters form the R1 [top-level research] schools . . . are very positive, and said her research is likely to be widely cited." They, however, abstained from voting.

41. The committee voted three against tenure with two abstentions (including one proxy vote).

8

42. On October 16, 2017, Department Chair Ron Lembke wrote to Dean Mosier recommending against granting Professor Wieland tenure despite concluding "based on my reading of the external review letters, I believe she has earned a rating of Excellent in Research."

43. On November 5, 2017, Professor Wieland filed an internal Title IX complaint alleging discrimination by the members of the subcommittee, viz., Professors Simons, Beekun and Stedham.

44. On November 17, 2017, Professor Wieland requested reconsideration of the tenure denial.

45. On December 5, 2017, the subcommittee, composed of individuals who were named in Professor Wieland's Title IX complaint, unanimously voted to stand by their initial decision and did not recommend Professor Wieland for tenure.

46. On January 18, 2018, the full department personnel committee voted to recommend tenure. The vote was 4-3, only the three subcommittee members yet again voting in the negative.

47. On January 22, 2018, Department Chair Ron Lembke, who previously concluded that Professor Wieland's research was excellent, agreed with the majority of the full department personnel committee and recommended that tenure be awarded to Professor Wieland, noting:

> "Per UNR Bylaws if the faculty member is not making adequate progress, they must be given a "program of improvement that must be undertaken to be considered for tenure at a later date." Dr. Wieland was encouraged to continue to improve, but not given any such program or other indicator that her teaching was below the standards for tenure or in need of significant improvement."

48. On January 24, 2019, in a letter to the Executive Vice-President and Provost, Dean Mosier recommended against tenure for Professor Wieland, despite noting the "disagreement [between the subcommittee on one hand, the outside reviewers, department chair

and full committee on the other] as to the quality of [her] research". Additionally, he acknowledged that the use of student evaluations by the subcommittee was questionable "the nature of such scores [being] the subject of much debate among university faculty."

**CAUSES OF ACTION**

**COUNT 1: DISCRIMINATION ON THE BASIS OF AGE IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. §621 et seq.**

49. Plaintiff repeats and realleges each and every pertinent allegation and every other pertinent paragraph contained in this Complaint, as if set forth fully herein.

50. Plaintiff re-alleges and incorporates the allegations set forth above including, but not limited to, paragraphs 10-48 as though each and every allegation is fully set forth herein.

51. Professor Wieland was born on October 10, 1972. At all times relevant to this complaint she was more than 40 years of age

52. Professor Wieland was denied tenure and her employment with Defendant terminated in violation of the ADEA which prohibits age discrimination.

53. As a direct and proximate result of the Defendant's violation of the ADEA, Professor Wieland suffered, among other things, lost wages, lost interest on earnings, investment opportunities, and retirement benefits; future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

**COUNT 2: DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. § 2000e, et seq.**

54. Plaintiff re-alleges and incorporates the allegations set forth including, but not limited to, paragraphs 10-48 as though each and every allegation is fully set forth herein.

55. At all times material to this Complaint, Plaintiff was a member of the class of persons protected by Title VII prohibiting discrimination on the basis of sex.

56. Professor Wieland was denied tenure and her employment with Defendant terminated in violation of Title VII, which prohibits sex discrimination.

57. As a direct and proximate result of the Defendant's violation of the ADEA, Professor Wieland suffered, among other things, lost wages, lost interest on earnings, investment opportunities, and retirement benefits As a direct and proximate result of the Defendant's violation of the ADEA, Professor Wieland suffered, among other things, lost wages, lost interest on earnings, investment opportunities, and retirement benefits; future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

**COUNT 3: DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. § 2000e, et seq.**

58. Plaintiff re-alleges and incorporates the allegations set forth including, but not limited to, paragraphs 10-48 as though each and every allegation is fully set forth herein.

59. At all times material to this Complaint, Plaintiff was a member of the class of persons protected by Title VII prohibiting discrimination on the basis of national origin.

60. Professor Wieland was denied tenure in violation of Title VII based on her national origin.

61. As a direct and proximate result of the Defendant's violation of the ADEA, Professor Wieland suffered, among other things, lost wages, lost interest on earnings, investment opportunities, and retirement benefits; future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

**COUNT 4: RETAILIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 623(d)**

62. Plaintiff re-alleges and incorporates the allegations set forth including, but not limited to, paragraphs 10-48 as though each and every allegation is fully set forth herein.

63. Plaintiff engaged in protected activity within the meaning of the ADEA when, among other things, she filed a Title IX complaint alleging discrimination.

64. Plaintiff's tenure was denied in violation of the ADEA because the denial of her tenure was based on her opposition to a practice made unlawful by this Act.

65. As a direct and proximate result of the Defendant's violation of the ADEA, Professor Wieland suffered, among other things, lost wages, lost interest on earnings, investment opportunities, and retirement benefits; As a direct and proximate result of the Defendant's violation of the ADEA, Professor Wieland suffered, among other things, lost wages, lost interest on earnings, investment opportunities, and retirement benefits; future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

**COUNT 5: RETAILIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. § 2000e, et seq.**

66. Plaintiff repeats and realleges each and every pertinent allegation and every other pertinent paragraph contained in this Complaint, as if set forth fully herein, including, but not limited to, paragraphs 10-48 as though each and every allegation is fully set forth herein.

67. Plaintiff engaged in protected activity within the meaning of the Title VII when she filed Title IX complaints for discrimination against Professors Simons, Beekun and Stedham and Dean Mosier.

68. Plaintiff's tenure was denied in violation of the Title VII based on her opposition to a practice made unlawful by this Act.

69. As a direct and proximate result of the Defendant's violation of the ADEA, Professor Wieland suffered, among other things, lost wages, lost interest on earnings, investment opportunities, and retirement benefits; future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

**COUNT 6: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (CONTRACTUAL)**

70. Plaintiff repeats and realleges each and every pertinent allegation and every other pertinent paragraph contained in this Complaint, as if set forth fully herein, including, but not limited to, Paragraphs 10-48.

71. Plaintiff and Defendant University were parties to a valid and binding employment contract.

72. A duty of good faith is implied in every contract made in the State of Nevada and Defendant University owed such duty to Plaintiff as a result of the valid and binding employment contract.

73. Defendant University breached the duty of good faith owed Plaintiff by performing in a manner that was unfaithful to the purpose of the contract by sanctioning and allowing a unfair and biased evaluation process by which Plaintiff's tenure review was conducted.

74. The entire process of Plaintiff's tenure review was tainted by multiple material misrepresentations of the Plaintiff's work record including, but not limited to the quality of her research and its importance to the marketing community.

75. The process of Plaintiff's tenure review was tainted by reckless or intentional procedural violations including changing bylaws that affected the makeup of the committees that were evaluating the Plaintiff's tenure consideration installing persons who were unfamiliar with Department standards and biased against the Plaintiff.

76. Plaintiff's justified expectations of a fair, impartial and unbiased evaluation process were denied.

77. Plaintiff has suffered and will suffer lost wages as a direct and proximate result of the actions of Defendants.

78. Plaintiff has been required to hire an attorney and expend fees and costs to pursue her rights through this action and is, therefore, entitled to recover her reasonable attorney fees and costs in an amount to be determined.

### COUNT 7: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (TORTIOUS)

79. Plaintiff repeats and realleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, including but not limited to 10-48, as if set forth fully herein.

80. Plaintiff and Defendant University were parties to a valid and binding employment contract.

81. There existed a special relationship between the parties upon which Plaintiff relied and which is characterized by a confidential and/or fiduciary responsibility owed to Plaintiff by Defendant University.

82. Defendant University was in the superior position to that of Plaintiff as herein stated.

83. Defendant University engaged in, and/or allowed, the grievous and perfidious misconduct as herein stated.

84. Plaintiff was damaged as a result of Defendant University's actions.

85. Plaintiff suffered mental anguish, humiliation, embarrassment, and emotional distress as a direct and proximate result of Defendant University's actions.

86. Plaintiff has suffered and will suffer lost wages as a direct and proximate result of the actions of Defendant University.

87. The actions of Defendant University were willful, malicious, fraudulent, and/or oppressive and calculated to cause Plaintiff harm. Defendant's actions merit an award against them of punitive

1 and/or exemplary damages to deter Defendant University from future conduct of similar interference.

88. Plaintiff has been required to hire an attorney and expend fees and costs to pursue his rights through this action and is, therefore, entitled to recover his reasonable attorney fees and costs in an amount to be determined.

## COUNT 8: BREACH OF CONTRACT

89. Plaintiff repeats and realleges each and every pertinent allegation contained in and every other pertinent paragraph contained in this Complaint, including, but not limited to, 10-48 as if set forth fully herein.

90. Plaintiff and Defendants had a valid and binding contract consisting of mutual promises supported by consideration. Plaintiff was offered the terms of the contract, accepted the terms by words and actions, and provided the requested consideration.

91. Defendants failed to perform under the contract and materially breached the contract by word and deed.

92. Plaintiff performed her duties under the contract including any and all conditions precedent, or stood ready, willing and able to fully perform, but for the Defendant's breach.

93. Defendants had no legal or equitable excuse for repudiating and breaching the contract.

94. As a result of the Defendant's breach, Plaintiff lost the benefit of her bargain and suffered incidental and consequential damages.

95. Plaintiff is entitled to money damages, specific performance, expectation damages, incidental damages, consequential damages, and/or specific performance, and other relief necessary to place her in the position that she would have held if not for the Defendant's breach.

**WHEREFORE**, Plaintiff expressly reserves the right to amend his Complaint at or before the time of trial of the action herein to include all items of damages not yet ascertained, and

**KEMP & KEMP**
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

demands judgment against the Defendants, upon each of them, as follows:

A. All applicable monetary and equitable relief provided for under Federal law, common law and Nevada state law including, but not limited, to the following:

1. Money damages in an amount to be determined at trial;

2. Economic damages including, but not limited to, lost wages or income and benefits of employment;

3. Contract remedies including expectation damages to provide Plaintiff with the benefit of her bargain, incidental and consequential damages to make the Plaintiff whole, and an order of specific performance requiring Defendants to grant her tenure and all of the privileges and benefits pertaining thereto;

4. Equitable and extraordinary relief in the form of an order reinstating Plaintiff to her position and granting her tenure in accordance with Title VII, the ADEA, and/or other applicable law, or front pay in lieu of reinstatement or, alternatively, for extraordinary and equitable relief ordering that the Plaintiff shall be reinstated to her position with all wages, benefits, and seniority restored and, further, be allowed to reapply through standard procedures for tenure to be decided before a fair, impartial, unbiased, and qualified tribunal.

5. Liquidated damages under the Age Discrimination in Employment Act;

6. Incidental and consequential damages for breach of contract or breach of the implied covenant of good faith and fair dealing;

7. Declaratory judgment and associated relief as the court may deem just and proper;

8. Compensatory damages for, *inter alia*, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other compensatory damages for, *inter alia*, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation, harm to career prospects, and others

9. Nominal damages if appropriate;

10. Punitive and/or Exemplary damages to deter the Defendants from future malicious, fraudulent, and oppressive conduct of a similar nature;

11. Pre-judgment and post-judgment interest on the amounts awarded at the prevailing legal rate;

12. For an additional amount to account for any taxes Plaintiff may be called upon to pay in relation to any award made herein; and

13. Reasonable attorney fees, reasonable expert witness fees, and other costs of the action pursuant to federal and state statute, agreement, or court rule.

B. A trial by jury on all issues that may be tried to a jury; and/or

C. For such other and further relief as the Court may deem just and proper.

DATED this 5th day of December, 2019.

                                            /s/ James P. Kemp
                                     JAMES P. KEMP, ESQ.
                                     Nevada Bar No.: 6375
                                     KEMP & KEMP
                                     7435 W. Azure Drive, Ste 110
                                     Las Vegas, NV  89130
                                     702-258-1183 ph./702-258-6983 fax

                                     *Attorneys for Plaintiff*

**KEMP & KEMP**
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983